IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | 2:25-cr-00305-GAW-1-7 |
| | : | |
| JAHMAL HUNTER, *et al.* | : | |
| | : | |
| | : | |

**ORDER**

### I.    **Background**

On April 2, 2026, a grand jury returned a superseding, twenty-six count indictment charging Jahmal Hunter (J. Hunter), Dontay Tabbs (D. Tabbs), Clarance Tabbs (C. Tabbs), Donte Hunter (D. Hunter), Cornelius Stallworth, Khalil Saeed, and Geore Pinkney with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and related offenses.  The indictment alleges that from August 2024 through July 2025, the defendants were engaged in a drug trafficking conspiracy, distributing quantities of methamphetamine, cocaine, crack cocaine, and fentanyl. The indictment recounts each of the Defendants' specific role in the conspiracy,[1] including the use of several stash houses, narcotics sales to confidential informants, firearms violations, aiding and abetting, and the murder of an individual named R.J., allegedly at the hands of Donte Hunter and Cornelius Stallworth, in retaliation for robbing one of the stash houses.

---

[1]      By way of reference, the superseding indictment is docketed at Dkt. 166.

Five of the Defendants have filed distinct motions to sever their cases in some form from the joint indictment. Specifically,

> J. Hunter and Saeed [ ] move to sever their cases from the defendants charged in Counts Fourteen and Fifteen (Stallworth and D. Hunter). D. Tabbs and Pinkney move to sever their cases from all defendants, requesting that they each be tried individually. C. Tabbs moves to sever his case from the defendants charged in Counts Fourteen, Fifteen, Seventeen, Eighteen and Nineteen (D. Hunter, Stallworth and Saeed). C. Tabbs requests that he be tried with J. Hunter, D. Tabbs and Pinkey, while D. Hunter, Stallworth and Saeed be tried in a different trial.

Gov't Resp. at 6. Separately, Cornelius Stallworth has filed a Response in Support of Co-Defendants' Motion for Severance.[2] For the following reasons, all the Defendants' Motions to sever are denied.

## II.    Legal Standard

Federal Rule of Criminal Procedure 8(a) "permits joinder of offenses that are based on the same act or transaction or on two or more acts of transactions connected together or constituting parts of a common scheme or plan." *United States v. Gorecki*, 813 F.2d 40, 41 (3d Cir. 1987) (cleaned up). Rule 8(b) provides for the joinder of defendants charged in the same indictment if they are alleged to have participated in the same offenses or conspiracy. *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

As a counterbalance, Rule 14 provides that if the joinder of offenses or defendants in an indictment appears to prejudice a defendant, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Rule 14 recognizes that joinder under Rule 8 may have a prejudicial impact on a particular party. *Zafiro*, 506 U.S. at 538. For

---

[2]    J. Hunter at Dkt. 207; D. Tabbs at Dkt. 210; Pinkney at Dkt. 212; C. Tabbs at 217; Saeed at Dkt. 220; Stallworth at Dkt. 222.

example, courts have recognized that mutually antagonistic or irreconcilable defenses among multiple defendants may be so prejudicial as to mandate severance. *Id.*

That said, "[t]he preference for joint trials is particularly strong when defendants are charged in a single conspiracy." *United States v. Burton*, No. CR 23-154-1, 2025 WL 1558471, at *4 (E.D. Pa. June 2, 2025) (Surrick, J.). Defendants seeking severance shoulder a heavy burden. *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994). This is true "even if the evidence against one [defendant] is more damaging than that against another." *United States v. Ward*, 793 F.2d 551, 556 (3d Cir. 1986).

"A claim for improper joinder under [Rule 14] must demonstrate clear and substantial prejudice" *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (cleaned up). Severance is appropriate only if there is a serious risk that joinder would compromise a specific trial right or prevent a jury from making a reliable judgment about guilt or innocence. *Id.* (citing *Zafiro*, 506 U.S. at 539). The critical inquiry is "whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *Id.* It bears repeating that all of this must be considered within the precept that judicial economy ordinarily requires defendants charged in a single conspiracy to be tried together. *United States v. Sebetich*, 776 F.2d 412, 427 (3d Cir. 1985).

## III. Discussion

The Movants all assert that their crimes should be severed from Counts 14 and 15 of the superseding indictment. Counts 14 and 15 charge Stallworth (alleged shooter) and D. Hunter (driver) with the intentional killing of R.J. in retaliation for

3

robbing one of the stash houses used in furtherance of the charged conspiracy. While each Movant has filed separately, the essence of their arguments is the same; that the alleged murder is categorically different in kind from the firearms and drug offenses with which they are charged. Their argument follows that the murder allegations are inflammatory, emotionally charged, and carry the unmistakable risk that the jury's exposure to the homicide evidence will prevent it from making an individualized, evidence-based judgement with respect to the Movants not charged at Counts 14 and 15.[3]

In response, the Government argues that joinder is proper in this matter. Specifically, Government asserts that the movants have not demonstrated substantial prejudice sufficient to warrant severance. In support, the Government recounts the circumstances of the homicide, arguing that "the murder was a step in a conspiracy that the defendants agreed to join and then acted in furtherance of through all of their varying roles." Gov't Resp. at 15. In its view, a jury would have no issue compartmentalizing each Defendant's specific role and the claims of spillover prejudice should be rejected. Finally, the Government observes that duplicating all of the evidence over the course of multiple trials would cut against the public interest in judicial economy and expose cooperating witnesses to prolonged safety concerns.

Defendant Stallworth's Response asserts a parallel theory in support of severance. Stallworth, charged with R.J.'s homicide at counts 14 and 15, argues that any remedy short of severance would only serve to highlight the Government's

---

[3]    Other Defendant's including C. Tabbs, D. Tabbs, and Pinkney move to sever themselves from certain other firearms and narcotics counts. Because the risk of potential prejudice is greatest with respect to the murder charges, the reasoning contained herein covers these claims as well.

evidence against Stallworth.  Specifically, Stallworth argues that the use of limiting instructions to cure the potential for spillover prejudice with respect to the non-homicide Defendants would necessarily have the opposite effect on his defense by platforming the more serious allegations against him.

This Court, in general,[4] shares the Government's view and concerns regarding severance in this case.  As an initial matter, this Court is satisfied that all Defendants and counts are properly joined under Rule 8.  All seven defendants are alleged to have played specific roles in the drug conspiracy charged at Count I.  The defendants are all alleged to have trafficked narcotics using multiple stash houses and there is sufficient interaction between multiple Defendants and multiple stash houses to satisfy joinder.

The Court is persuaded by the Government's Rule 14 analysis as well.  First, the murder of R.J. is alleged to have been in retaliation for the attack and robbery of Defendant Saeed at one of the stash houses used in furtherance of the overall drug conspiracy.  Gov't Resp. at 14-15.  In short, the retaliatory murder is woven into the Government's theory of how the organization conspired to protect, maintain, and deliver narcotics from the stash houses.

Second, and most compelling, is the inefficiency of duplicating evidence against multiple defendants in at least two trials; each of which would last no fewer than three weeks.  This is compounded by presence of cooperating witnesses which would

---

[4]    The Government represented during the June 15, 2026, suppression hearing, and suggests in its Response, that all the evidence, including evidence of R.J.'s murder, would be admissible against any of the Defendant's in severed trials.  *See* Gov't Resp. at 11, 15.  Although any determination would be speculative at this juncture, this Court is hesitant to endorse that view, wholesale.

be subject to prolonged exposure in the event of a severance.  Defendant's simply have not presented the type of substantial prejudice that counters the preference for a joint trial.  *Davis*, 397 F.3d at 182 (3d Cir. 2005).

The Defendants rely principally on *United States v. Gomez* to argue that evidence against the two homicide defendants may cause prejudicial spillover effect and prevent a jury from compartmentalizing evidence with respect to the non-homicide Defendants.  111 F. Supp. 2d 571 (E.D. Pa. 2000).  In *Gomez*, the court determined that relief under Rule 14 was warranted where the Defendant moved to sever his drug offenses from that of his four co-defendant's who were charged with conspiracy to commit murder.  *Id.* at 572.  Notably, the court observed that "trying [defendant] with his current co-defendants would, at best, present only a marginal advance in judicial efficiency."  *Id.* at 574.

This Court takes a different view in the present matter.  At the outset, efficiency (and the safety of cooperating witnesses) counsels heavily in favor of joinder here.  Considering the lack of precedential effect in *Gomez* and the fact that a "trial judge is in the best position to balance the possible prejudice … of a joint trial against the concerns of judicial economy[,]" this Court's evaluation controls.  *United States v. Sebetich*, 776 F.2d 412, 427 (3d Cir. 1985).  Separately, there is no murder conspiracy charged in this matter; there is only the conspiracy to distribute controlled substances in Count I.  All parties are charged in Count I and the murder is alleged to be in furtherance of that conspiracy.  In this Court's view, multiple conspiracies present complex evidentiary challenges which are not present here.  The fact remains that

6

the substantive charges all relate to the same conduct – the use of the stash houses and distribution of drugs.

Though not through motion, Defendant Stallworth makes the strongest argument for severance in his Response in Support of Co-Defendants' Motions.  He asserts that limiting instructions used to cure and manage any potential prejudice to the other Defendants will necessarily highlight his charges and culpability.  The Court does not find this argument compelling.  The mere act of instructing the jury as to which charges apply to which Defendants does not elevate or unduly highlight the charges against Stallworth. Rather, the Court is confident in its ability to clearly delineate the charges applicable to each Defendant and to instruct the jury on the Government's burden of proof as to each allegation without creating unfair prejudice. Accordingly, Stallworth's assertions do not demonstrate the degree of prejudice necessary to warrant severance.

## IV.    Conclusion

For the foregoing reasons, joinder under Federal Rule of Criminal Procedure 8 is proper in this matter and Defendants' motions to sever all denied.  An appropriate order will follow.

BY THE COURT:

GAIL A. WEILHEIMER,  J.

7